## Bennett, Administratrix, v. Bechtel.

*Judgment—Opening judgment—Dedecents' estates—Evidence—Party dead —Witness.*

A judgment entered on a judgment note after the death of a decedent to whom the note was given will not be opened because the defendant did certain work for the decedent which was to be credited on the note, where the only evidence to that effect is the testimony of the defendant himself.

Rule to open judgment. C. P. Union Co., March T., 1925, No. 27.

*Clair Groover*, for rule; *William N. C. Marsh* and *C. C. Lesher*, contra.

POTTER, P. J., Aug. 17, 1925.—Mary W. Bennett is the administratrix *c. t. a.* of the estate of William R. Follmer, who died a year ago or more. On Feb. 4, 1909, the defendant, William R. Bechtel, executed and delivered to the said William R. Follmer his judgment exemption note, under seal, payable one day after date, in the sum of $30.74. The sum of $5.74 was paid on this note on Jan. 20, 1910.

After the death of Follmer, his said administratrix caused the said note to be appraised and entered of record as a judgment, to No. 27, March Term, 1925, on which execution was issued and levy made on the personal property of this defendant, who then presented his petition to this court asking for a rule on the plaintiff to show cause why the said judgment should not be opened and he let into a defence, the lien of the levy to remain, which rule we now have before us for disposal.

The petition admits the giving of the note for the amount as alleged, but sets up as a defence that the defendant performed labor for Follmer at various times after Jan. 20, 1910, which, it was agreed between them, should be applied on the note, and that the same should be canceled and destroyed by Follmer. If such an agreement existed between them, Follmer did not apply such services as a credit on the note, nor did he destroy it, for it now turns up in the hands of his administratrix as an asset of his estate, with no credit upon it except the said sum of $5.74.

Depositions were taken on this rule and the said Mary W. Bennett and the defendant testified. The former says she knows nothing about the alleged agreement between her decedent and the defendant and that she knows nothing about the alleged payment of the note. The defendant testified, under objection to his competency. Of course, we cannot receive his testimony. Death has closed the mouth of Follmer and the law closes the mouth of this defendant. How, then, can he prove the alleged agreement? If this judgment was opened and the issue was to be tried before a jury, this defendant could not testify to anything occurring in the lifetime of Follmer between them.

The note stands for what it represents itself to be and the burden falls on the defendant to controvert it, and he does not deny its existence or the giving of it. Upon a consideration of this application to open this judgment, our guiding star must be the querry: Is there sufficient testimony or evidence on the part of the petitioner to sustain a verdict if one were rendered in his favor? Or, would we be obliged to set aside the verdict? Steele Iron Co. v. Jacobs, 9 Pa. Superior Ct. 122; ' Kaier v. O'Brien, 202 Pa. 153; Jenkintown Bank's Appeal, 124 Pa. 337; Earley's Appeal, 90 Pa. 321.

It is true that an application to open a judgment is addressed to the sound discretion of the court as well as to its equitable powers, but, in exercising this sound discretion and these equitable powers, we must not lose sight of the *dictum* as laid down in the above cited cases.

If we opened this judgment and sent the case to a jury, we would have no testimony whatever on which to base this petitioner's contention, he being an incompetent witness. The judgment would stand on its own bottom with no testimony to prove it otherwise. Or, in other words, there would be nothing to submit to the jury and we would be obliged to give binding instructions for the plaintiff. Why, then, take up the time and make the expense of a futile trial?

Then, again, unless it could be satisfactorily proven that this agreement existed between Follmer and the defendant, his claim, not reduced to judgment, could not be offered as a set-off against a judgment.

We will frankly say that we have carefully searched the files in this case for something which, from a legal viewpoint, would justify us in opening the judgment, but we must just as frankly say that we have been unable to discover anything which would justify us in so doing.

And now, to wit, Aug. 17, 1925, the rule to open the judgment is discharged, to which an exception is noted for the petitioner.

From Charles P. Ulrich, Selinsgrove, Pa.